UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.: 1:14CR00453** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE BENITA PEARSON** |
| -vs- | ) | |
| | ) | |
| **Samuel Condo, Jr** | ) | |
| | ) | |
| **Defendant.** | ) | |

### SENTENCING MEMORANDUM

Samuel Condo is going to jail. Maybe, after all, this is what is the best for him as well, as only Bureau of Prisons (Bureau) can provide him with the necessary treatment he desperately needs. His incarceration should be beneficial for both: our society and him. The Bureau provides a full range of mental health treatment through staff psychologists and psychiatrists. Psychologists are available for formal counseling and treatment on an individual or group basis. In addition, staff in an inmate's housing unit are available for informal counseling. Services available through the institution are enhanced by contract services from the community (www.bop.gov). Amanda Pustilnik, associate professor of law at University of Maryland and an expert on the relationship of law, neuroscience, and mental health policy writes: "Today, our largest mental hospitals are our jails. The jail at New York's Rikers' Island functions as the nation's largest psychiatric facility. Los Angeles' jails – not its hospitals – are California's largest providers of mental health care. State prisons alone spend nearly $5 billion annually to incarcerate mentally ill inmates who are not violent." "According to the Department of Justice, nearly 1.3 million people with mental illness are incarcerated in state

and federal jails and prisons – compared to only about 70,000 people being served in psychiatric hospitals.

Sam Condo didn't get the necessary treatment while leaving in Texas or serving in the Navy. It is his sincere hope that he will get the necessary help at the Bureau of Prisons.

We are at the juncture where the Court must engage in an individualized sentencing of Mr. Condo, which involves consideration of the factors codified at 18 U.S.C. § 3553(a), guided by *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005); *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007), and *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007). As the full Sixth Circuit observed:

> *Booker* empowered district courts, not appellate courts and not the Sentencing Commission. Talk of presumptions, plain error and procedural and substantive rules of review means nothing if it does not account for the central reality that *Booker* breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them.

*United States. v. Vonner*, 516 F.3d 382, 392 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 68 (2008).

**The paramount question before this Court is what is the appropriate length of the incarceration necessary in this case? Defendant submits that provided appropriate treatment no longer then the statutory minimum ten years is warranted.**

*I. INTRODUCTION*

The most important fact in the Pre Sentencing Report (PSR) can be found in paragraph 62. It states:

> The defendant reported that his childhood was dysfunctional. He reported that he was sexually molested by his father from the ages of 3 until 5. He indicated that he only confronted his parents with the molestation as an adult.

Further, PSR provides that Samuel was in counseling in the military (PSR, 66). Notwithstanding his mother's explanation that this counseling was due to his lack of sleep and trauma responding to Indonesian tsunami's devastation (PSR, 66), the undersigned submits that the roots of Samuel's problems can be found in the childhood abuse.

Melisa and Joshua Hall's article in the Journal of American Counseling Association, provide the following insight in summary.

Childhood sexual abuse is a subject that has received much attention in recent years. Twenty-eight to 33% of women and 12 to 18% of men were victims of childhood or adolescent sexual abuse (Roland, 2002, as cited in Long, Burnett, & Thomas, 2006). There are many forms of childhood sexual abuse. The sexual abuse can involve seduction by a beloved relative or it can be a violent act committed by a stranger. Sexual abuse can be hard to define because of the many different forms it can take on, the different levels of frequency, the variation of circumstances it can occur within, and the different relationships that it may be associated with. Maltz (2002) gives the following definition: "sexual abuse occurs whenever one person dominates and exploits another by means of sexual activity or suggestion" (Maltz, 2001a, as cited in Maltz, 2002, p. 321). The majority of sexual abuse happens in childhood, with incest being the most common form (Courtois, 1996, as cited in Maltz, 2002). The impact of childhood sexual abuse varies from person to person and from case to case.

Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, self-blame, eating disorders, somatic concerns, anxiety, dissociative patterns, repression, denial, sexual problems, and relationship problems. Depression has been found to be the most common long-term symptom among survivors. Survivors may have difficulty in externalizing the abuse, thus thinking negatively about themselves (Hartman et al., 1987). After years of negative selfthoughts, survivors have feelings of worthlessness and avoid others because they believe they have nothing to offer (Long et al., 2006). Ratican (1992) describes the symptoms of child sexual abuse survivors'

depression to be feeling down much of the time, having suicidal ideation, having disturbed sleeping patterns, and having disturbed eating patterns.

Survivors often experience guilt, shame, and self-blame. It has been shown that survivors frequently take personal responsibility for the abuse. When the sexual abuse is done by an esteemed trusted adult it may be hard for the children to view the perpetrator in a negative light, thus leaving them incapable of seeing what happened as not their fault. Survivors often blame themselves and internalize negative messages about themselves. Survivors tend to display more self-destructive behaviors and experience more suicidal ideation than those who have not been abused (Browne & Finkelhor, 1986).

Survivors of sexual abuse may experience difficulty in establishing interpersonal relationships. Symptoms correlated with childhood sexual abuse may hinder the development and growth of relationships. Common relationship difficulties that survivors may experience are difficulties with trust, fear of intimacy, fear of being different or weird, difficulty establishing interpersonal boundaries, passive behaviors, and getting involved in abusive relationships (Ratican, 1992). Feinauer, Callahan, and Hilton (1996) examined the relationship between a person's ability to adjust to an intimate relationship, depression, and level of severity of childhood abuse. Their study revealed that as the severity of abuse increased, the scores measuring the ability to adjust to intimate relationships decreased. Sexual abuse often is initiated by someone the child loves and trusts, which breaks trust and may result in the child believing that people they love will hurt them (Strean, 1988 as cited in Pearson, 1994). Kessler and Bieschke (1999) found a significant relationship between women who were sexually abused in childhood and adult victimization.

(Hall, M., & Hall, J. (2011). The long-term effects of childhood sexual abuse: Counseling implications. Retrieved from http://counselingoutfitters.com/vistas/vistas11/Article_19.pdf)

## II. ARGUMENT

The Court has yet to determine the applicable guideline range in this case, but once it does, it must "give respectful consideration to the guidelines" in determining a sufficient sentence, *Kimbrough v. United States*, 128 S.Ct. 558, at 570, 169 L.Ed.2d 481 (2007). However, the Court may not presume that the guideline sentence is the correct one. *Rita v. United States*, 127 S.Ct. 2456, (2007). Nor is the Court bound by the "policy determinations" embedded in the guidelines. *Kimbrough v. United States,* 128 S.Ct. 558 (2007). After accurately calculating the advisory guideline range so that it "can derive whatever insight the guidelines have to offer," the district court "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d. 680, at 685 (7th Cir. 2007).

Since the Court has yet to determine the applicable guideline range, it is not known whether that determination will contain a "departure". A guideline departure refers to the imposition of a sentence outside the advisory guideline range, or the assignment of a criminal history category, different than the one contemplated by the guidelines, to result in a sentence outside the advisory guideline range. U.S.S.G. § 1B1.1 (E). Importantly, a departure results from a district court's application of a particular guidelines provision. *United States v. Smith*, 474 F.3d 888, 896(n)(3) (6th Cir. 2007).

Depending on the Court's determination on the Sentencing Guidelines, this Defendant will seek a "variance" from the advisory guideline range. A variance refers to the imposition of a sentence outside of the advisory guidelines range based on this Court's weighing of one or more of the sentencing factors of 18 U.S.C. § 3553(a). *United States v. Smith*, 474 F.3d 888 (6th Cir. 2007). And while it is certainly true that the same facts and analysis can, at times, be used jointly to justify a guidelines departure <u>and</u> a variance, the concepts are distinct.

Samuel Condo plead guilty to the Indictment and accepted his responsibility. PSR calculated his offense level at 35 and criminal category at II. Defendant objects to a criminal history category of II because it overstates his criminal history. *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (stating that post-*Booker* a sentencing court has "greater latitude" to sentence outside the guideline range, and that "[i]n appropriate cases . . . a district court may conclude that the criminal history category overstates the severity of the defendant's criminal history or that a lower sentence would

still comply with and serve the mandates of section 3553(a)") (quotation omitted); *United States v. McGhee*, 512 F.3d 1050 (8th Cir. 2008) (per curiam).

Category II is based on two separate offenses for drunk driving. Although serious, said offences can be attributed to this Defendant's mental state as described in PSR and as such warrant keeping this Defendant in Criminal Category I.

Further, Mr. Condo states that he never forwarded any materials portraying sadistic or masochistic materials to the minor contrary to the PSR 38.

## SENTENCING GUIDELINES AND § 3553(a) FACTORS

The Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005) held that the Sentencing Guidelines are advisory, not mandatory, and that district courts have discretion in fashioning a sentence under 18 U.S.C. § 3553(a). The later cases of *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007), *Gall v. United States*, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007) confirm that district courts have flexibility and discretion to fashion an appropriate sentence based on the individual facts of a given case.

The challenge in this case, like all cases, is to determine a fair sentence that is sufficient but not great than necessary. A sentence that is too lenient deprecates the seriousness of the crime and fails to promote respect for the law. At the other extreme, a sentence that is too severe is unjust and also fails to promote respect for the law.

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. See 18 U.S.C. $3553(a) (emphasis added). Those purposes include the need:

to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
to create adequate deterrence;
to protect the public from b r e crimes of the defendant; and
to provide the defendant with necessary treatment and training. §3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors as well,

including:

the nature and circumstances of the offense, 3553(a)(l);
the history and characteristics of the defendant, 3553(a)(l);
the kinds of sentences available, 3553(a)(3);
the sentencing guideline range, 3553(a)(4);
pertinent Sentencing Commission policy statements, 3553(a)(5);
the need to avoid unwarranted sentencing disparities, 3553(a)(6);
the need to provide restitution to any victims of the offense, 3553(a)(7).

As Booker emphasized, under the Sentencing Reform Act, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Booker, 125 S.Ct. at 760 (quoting 18 U.S.C. § 3661). After Booker, courts are therefore required to consider factors which the guidelines discourage or reject, such as a defendant's lack of criminal history, family history, family responsibilities, and low likelihood for recidivism.

In the case at bar this Defendant's history of sexual abuse at early age warrants variance.

### III.  CONCLUSION.

For the reasons explained above and such additional considerations as may emerge at the sentencing hearing, defendant requests this Court, to sentence Mr. Condo in a manner sufficient, but not greater than necessary to comply with the factors contained in 18 U.S.C. §3553.

Mr. Condo, respectfully requests this Court to find that the statutory minimum of ten years is appropriate length of incarceration for him.

           Respectfully submitted,

           /s/  Alek El-Kamhawy
           **ALEK  EL-KAMHAWY (0071845)**
           Counsel for the Defendant
           **14837 Detroit Avenue, #227**
           Lakewood, Ohio 44107
           **(216) 701-9465**

**(216) 767-5855**
**alek.kamhawy@gmail.com**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Alek El-Kamhawy*
**ALEK  EL-KAMHAWY (0071845)**