IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:14-CR-453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| vs. | ) | |
| | ) | |
| SAMUEL E. CONDO, JR., | ) | UNITED STATES OF AMERICA'S |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, by its counsel, Steven M. Dettelbach, United States Attorney, and Michael A. Sullivan, Assistant U.S. Attorney, and submits the attached Sentencing Memorandum, which is incorporated herein by reference.

        Respectfully submitted,

        STEVEN M. DETTELBACH
        United States Attorney
        Northern District of Ohio

By:   /s/ Michael A. Sullivan
        Assistant U.S. Attorney (0064338)
        Suite 400, U.S. Courthouse
        801 West Superior Avenue
        Cleveland, Ohio 44113
        Tel. No. (216) 622-3977
        Fax No. (216) 522-2403
        E-Mail: Michael.a.sullivan@usdoj.gov

**MEMORANDUM**

I. **INTRODUCTION**

Defendant awaits sentencing after pleading guilty to five counts of a five-count Indictment. The Indictment charged in Count 1: Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); in Count 2: Receipt/Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2); in Count 3: Transfer Obscene Material to Minor, in violation of 18 U.S.C. § 1470; in Count 4: Transportation of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(1); and in Count 5: Travel to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).  The Government asserts that the Defendant should be sentenced within the properly calculated guideline range of 188 to 235 months.

II. **STATEMENT OF FACTS**

Between October 21, 2014 and October 24, 2014, an Ohio Internet Crimes Against Children (ICAC) undercover investigator, using a computer located in the Northern District of Ohio, was connected to the Internet and was online posing as an adult female and mother of a 13 year-old girl. (R. 25, PageID 125: ¶ 5.)   Between October 20, 2014 and October 24, 2014, Defendant was connected to the Internet from the State of Texas.  (Id.)  On October 20, 2014, Defendant sent a message to the undercover investigator, using the screen name, "loverofincestz", through the website Motherless.com, asking if she would like to talk.  (Id.)  The message read: "are you into incest would you like to talk and we can talk and meet in person."  (Id.)

On October 21, 2014, the undercover investigator responded saying, "hi there…just getting started with incest but I find the lifestyle appealing. I have a young daughter and want to show her what the world has to offer. What about you?"  (Id.)  The defendant replied, "I have a niece I

play with…so what got you started…how old is your daughter." (Id.) Thereafter, Defendant and the undercover investigator communicated numerous times between October 21-24, 2014. (Id.) Defendant began conversations via email, texting, voice calls, and the cellular phone app KIK, a mobile messaging application, with both undercover profiles. (Id.)

During these communications, Defendant expressed his interest in meeting the 13 year-old child to engage in sexual activity, including genital-genital sexual intercourse with both mother and child. (Id.) The defendant was repeatedly told the child was 13 years of age. (Id.) The undercover investigator also posed as the 13 year-old girl and communicated with Defendant via the KIK messenger app. (Id., PageID 126: ¶ 7.) Between October 21, 2014 and October 24, 2014, Defendant engaged in several conversations with the undercover investigator, posing as the 13 year-old girl, via KIK messenger, wherein Defendant persuaded, induced, and enticed the child to engage in illegal sexual activity, expressed his interest and intention to take the child's virginity, teach her how to masturbate and engage in other sexual activity with her. (Id.) For example, one KIK message from Defendant to the 13-year-old stated, "I want you to kiss your mom and touch her," and "I want you two to touch tonight." (Id., PageID 126: ¶ 8.) Another message stated, "you know that you and your mom can share me," and, "Some nights I am in your bed others nights in your mom's and some both of you in my bed." (Id.) Defendant also instructed the 13-year-old girl how to masturbate and told her that they could have sex with her mom watching. (Id.)

On October 21, 2014, Defendant purchased an airline ticket for October 24, 2014 from Dallas-Fort Worth Airport to Cleveland, with a connection in Atlanta. (Id. at ¶ 10.)

On October 21, 2014, Defendant knowingly transmitted numerous files, approximately 19 files, some of which contained visual depictions of real minors engaged in sexually explicit

4

conduct, via the Internet, to the undercover investigator.  (Id. at ¶ 9.)  Defendant was aware of the nature and content of the files prior to transmitting them to the undercover investigator.  (Id.)  The images depicted prepubescent minors performing in explicit poses or performing sexual acts.  (Id.)  Two of the pictures depicted the penetration of prepubescent female minors, one of whom appeared to be under the age of 5.  (Id.)

On October 22, 2014, Defendant transmitted to the undercover officer (posing at the 13 year-old girl), via the Internet, a video depicting himself masturbating.  (Id. at ¶ 11.)  Defendant also transmitted eight images of himself, including three of his erect penis.  (Id.)

A meeting was arranged for Defendant to fly from Arlington, Texas to Cleveland, Ohio to meet both the adult female and the 13 year-old girl.  On October 24, 2014, Defendant travelled from the State of Texas to the Northern District of Ohio with the intention to engage in sexual activity, including genital-genital sexual intercourse with a 13 year-old girl.  (Id. at ¶ 12.)  While traveling from Texas to Ohio, Defendant brought with him his cell phone, which contained numerous files depicting real minors engaged in sexually explicit conduct.  Defendant knew that such files were on his cell phone when he left Texas.  Defendant also brought panties for both the adult female and 13 year-old girl as gifts with him to this meeting.  (Id.)

On October 24, 2014, members of the ICAC Task Force established surveillance at the Cleveland Hopkins Airport in Cleveland, Ohio.  Upon his arrest at Cleveland Hopkins Airport on October 24, 2014, Defendant was advised of his Miranda rights and confirmed that he understood them.  (Id.)  Following his arrest, Defendant was interviewed by members of the ICAC Task Force.  Defendant admitted to knowing a woman in Ohio (who he believed to be 30 years-old) and that he had been communicating via KIK with her daughter (who he believed to be 13 years-old).  (Id.)  He admitted that he had purchased an airline ticket after having

5

communicated with the woman in Ohio for just a few hours.  (Id.)  He also admitted that he had electronically sent images of child pornography, a video of himself masturbating, and various images of himself and his penis to the woman and her daughter separately.  (Id.)  He confirmed that he had bought several sets of Victoria Secret panties in two different sizes (one size for the woman and one size for her daughter) and had them in his luggage.  (Id.)  Defendant also admitted to the investigators he wished to begin an "incest family" with Traci and her daughter.  (Id.)  Defendant explained that this would entail having sex with both the woman and her daughter, impregnating and having children with the daughter, and then sexually playing with those offspring.  (Id.)

On October 24, 2014, the Ohio Internet Crimes Against Children Trask Force seized various items from the person of Samuel Condo.  Those items included a Samsung Galaxy S5 smartphone which was examined and found to contain 73 images of children engaged in sexual activity and/or masturbation and 25 children depicted in a state of nudity with an emphasis on their breasts and/or genitals.  (Id. at ¶ 13.)

### III. SENTENCING FACTORS

The sentencing factors weigh in favor of a sentence within the guideline range.  The following factors set forth in 18 U.S.C. § 3553(a) are relevant to the determination of what sentence is "sufficient" to meet the statutory purpose:

**A. Title 18 U.S.C. Section 3553(a)(1): The sentence should reflect the nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of Defendant's current offenses are disturbing; especially considering the type of material he solicited and received.  "An offender's pornography and erotica collection is the single best indicator of what he wants to do."  KENNETH V. LANNING,

6

OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS–FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).  A forensic analysis of Defendant's digital media revealed images of prepubescent children, displaying their genitals while posing nude, and being subjected to various sex acts.  Moreover, after the defendant was indicted, a search of his Yahoo account produced an additional 121 images and a video depicting prepubescent children being subjected to various sex acts. Defendant also has a history of operating motor vehicles under the influence. Defendant's criminal history combined with his disconcerting current offenses, suggest his sentence should be severe.

**B.  Section 3553(a)(2)(A): The sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

This factor answers the need for retribution so that the punishment fits the crime and the defendant is punished justly.  *See* United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010).  The Irey court cited the Senate Report regarding this provision:

> This purpose—essentially the "just desserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct.  From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59). Id.

Courts have recognized that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses."  United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009).

**1.  Number and Severity of Images**

When weighing sentencing factors, courts look at the severity and/or number of images when deciding the defendant's appropriate sentence. The Fifth and First Circuits recognize that:

[it is logical] to differentiate between defendants who view or distribute images of prepubescent children being raped and sodomized, as one example under the Guidelines, and those defendants who view or distribute pornography that depicts minors who are not prepubescent engaged in sexual activity that is not violent or sadistic.  We reject the view that because there are many defendants who view images of children under the age of 12 being raped and sodomized, and because there are many defendants who obtain hundreds of pornographic images of children, the terms of imprisonment should be reduced for all who receive or transport child pornography, regardless of the content of those images and regardless of the number of images.  The Guidelines treat differing behavior differently, and in our view, that differentiation is not unreasonable.

United States v. Miller, 665 F.3d 114 at 123 (5th Cir. 2011).  *See also* United States v. Clogston, 662 F.3d 588 (1st Cir. 2011).

Courts should consider the number of images found in Defendant's possession, as well as, "the nature of those images, the age of the children, the conduct depicted in the images and all remaining 3553(a) factors."  United States v. Cunningham, 669 F.3d 723 at 732 (6th Cir. 2012). "The sadistic nature of much of the child pornography consumed by the defendant is another reason to worry about his being on the loose."  United States v. Garthus, 652 F.3d 715, 720 (7th Cir. 2011).

Defendant has collected a large amount of images, suggesting a serious perversion, and his comments to the investigators suggest his desire to escalate from just viewing and sending child pornography to participating in genital-genital sexual intercourse with children with the wish of creating an incest family.  Indeed, Defendant travelled from the State of Texas to Ohio in order to engage in sex with a small child.  Even more disturbing was his intent to impregnate the child and then abuse the resulting offspring.

8

Additionally, Defendant received and distributed images of both violent and sadistic sexual activity as well as non-violent depictions of prepubescent sexual intercourse. Consistent with the cases cited above, based on the large number of images found in Defendant's possession as well as his statements to investigators, this factor weighs in favor of a sentence within the guidelines.

### 2. Impact on the Victims

Fortunately, this case involved an undercover operation, so the child who Defendant planned on raping and impregnating did not exist, and thankfully will not suffer from his conduct. But Defendant's crimes were not victimless. Child pornography is an extremely serious offense which harms victims irrevocably and Defendant's sentence must appropriately punish him for his participation in its distribution. "Child pornography is, without qualification, a serious crime." United States v. Robinson, 669 F.3d 767, 776 (6th Cir. 2012). The seriousness of child pornography is well-documented by the Eleventh Circuit in United States v. Pugh: "Congress repeatedly has stressed the terrible harm child pornography inflicts on its victims, dating back to its first enactment of child pornography laws in 1977. Since that time, it has not only made detailed findings, but has expanded repeatedly criminal exposure for the possession of child pornography." United States v. Pugh, 515 F.3d 1179, 1197-98 (11th Cir. 2008).

The images and videos both sent and collected by Defendant renew the abuse of countless victims. "[e]very instance of viewing images of child pornography represents a ...repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248 § 501(1)(A) & (D), 120 Stat. 587, 623. Because child pornography is an extremely serious offense which harms victims irrevocably, Defendant's sentence

9

must appropriately punish him for his participation in its consumption and distribution. Unfortunately, "the focus of nearly every argument regarding the child pornography Guidelines is on the harm to the offender, rather than the harm to the victim." United States v. Cunningham, 680 F.Supp2d. 844, 863 (N.D. Ohio 2010).  Yet, "the harm to victims is permanent and ongoing." Id.  As the Cunningham court noted, it is "important to impose an appropriate sentence to alert end users to the fact that receipt and distribution in and of itself is a heinous crime deserving of a severe punishment."  Id.

The images and videos collected and distributed by Defendant renew the abuse of countless, nameless victims.  These young victims carry the scars of this abuse, quietly and internally, for the rest of their lives.  Child pornography that depicts the sexual abuse of children magnifies and perpetuates the harm to the child.  See New York v. Ferber, 458 U.S. 747, 759 (1982) (stating that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.")  By continuing to download and send these abusive images and videos to others, Defendant has perpetuated the pain for these children.  Defendant's sentence should be commensurate with the harm done and threatened by his offense.  A sentence within the guideline range is therefore proper.

**C. Section 3553(a)(2)(B): The sentence must afford adequate deterrence to criminal conduct.**

**General Deterrence is an Important Factor in Sentencing**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is an important factor when considering an appropriate sentence.  Irey, 612 F.3d at 1206 (citing United States v. Ferber, 458 U.S. 747, 760 (1982)).  In Bistline, the Sixth Circuit reversed the

10

District Court's decision that deterrence was not a factor in child pornography cases, holding "The district court stated, 'general deterrence…will have little [if] anything to do with this particular case.' That statement is inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" United States v. Bistline, 665 F.3d 758 at 767 (6th Cir. 2012), (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

"The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." Ferber, at 760. "It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." Osborne v. Ohio, 495 U.S. 103, 109-10 (1990). "Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing." United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007). "Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry to punish those who traffic in it." United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006).

The Seventh Circuit emphasized in United States v. Goldberg, the need for adequate deterrence is especially urgent in child pornography cases:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded- both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment

11

for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted), *cert. denied,* 128 S.Ct. 666 (2007).

Here, the Defendant not only perpetuated the child pornography market by trading in such material, and using it to attempt to entice the mother to allow Defendant to have sex with her daughter, but Defendant also attempted to be an active child molester by traveling over a thousand miles to have sex with a young child.

**D. Section 3553(a)(2)(C): The sentence must protect the public from further crimes of the defendant.**

This is the factor involving the incapacitation or specific deterrence of the defendant that the court is to consider. See Irey, 612 F.3d at 1210.  This Circuit and Congress have recognized that sex offenders have a high rate of recidivism.  The Sixth Circuit stated in United States v. Richardson that there are, "long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison."  United States v. Richardson, 349 Fed. Appx. 38, 44 (6th Cir. 2009) (quoting, H.R.Rep. No. 108-66 at 49-50 (2003) (Conf.Rep.), *reprinted* in 2003 U.S.C.C.A.N. 683, 684.) Defendant's sentence should be one that keeps him from re-offending with other minors.

**IV.  CONCLUSION**

It is the Government's request that Defendant be sentenced within the appropriately calculated guideline range for a sentence that is sufficient, but not greater than necessary.

## CERTIFICATE OF SERVICE

I certify that on August 3, 2015, copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Michael A. Sullivan
Assistant U.S. Attorney